FILIPPO LABAGNARE *vs.* UNITED ELECTRIC RAILWAYS COMPANY.

MARCH 22, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

BAKER, J. This is an action of trespass on the case for negligence. At the trial in the superior court the jury returned a verdict in favor of the plaintiff for $1500. The defendant's motion for a new trial, argued solely on the ground that the amount of the verdict was excessive, was denied by the trial justice and the defendant duly prosecuted its bill of exceptions to this court. The only exception now pressed is to that decision.

No question of liability is raised. Briefly the evidence showed that about 10 p.m. on April 7, 1946 the plaintiff

was riding in an automobile, described as a beach wagon, which was proceeding at a speed of about twenty miles per hour in an easterly direction on its right-hand side of Broadway in the city of Providence. The plaintiff was sitting in a short seat directly behind his son-in-law who was driving the beach wagon. At that time a trackless trolley or bus owned by the defendant and operated by its agent was proceeding on Broadway in the same direction. As the bus passed to the left of the beach wagon the trolley poles came off the wires and it stopped about 50 feet ahead of the beach wagon which in the meantime had also come to a stop.

According to evidence submitted on behalf of the plaintiff, as the bus passed the beach wagon the operator of the last-named vehicle heard something hit it with a noise like an exploding bomb. He put on his brakes at once, falling forward and swaying to the right and then to the left as the beach wagon stopped. No witness describes how that vehicle and the trackless trolley came in contact with each other, but the physical facts clearly show that they did so. It is not disputed that when the bus stopped the beach wagon's taillight, rear number plate and the bracket to which they were attached were found hanging from the trolley rope of the bus. They had been forcibly pulled from the left rear corner post to which they had been fastened a few feet from the ground. Also a "back windshield" on that vehicle was broken and a hole about a foot square had been made in its roof directly over the place where the plaintiff had been seated.

As a result of the accident he was thrown to the floor of the beach wagon and his back was injured. Shortly thereafter he was driven by his son-in-law to the office of a doctor who was absent at that time. The plaintiff was then taken to his own home where he was put to bed and was visited by the above-mentioned doctor on the following day. He was still receiving treatment for his back when the trial in the superior court was held in February 1947. At that time it appeared in evidence that

he was sixty-three years of age; that for forty years he had worked steadily in the manufacturing jewelry business, being in charge of shops for nineteen years; that during the depression of 1929 he sold perfumes to barbers and then later went back into the jewelry business; and that for the last three years before this accident he had been peddling, in Pawtucket, fruit, vegetables and fish from a Ford truck which he owned.

The issue in this case is very narrow. It is whether the amount of damages awarded the plaintiff by the jury and approved by the trial justice is so grossly excessive that we should grant the defendant a new trial. The medical testimony relating to the plaintiff's injuries is conflicting.

The plaintiff's doctor testified in substance that upon examination the day after the accident he found that plaintiff had a contusion and sprain of his lower back, tenderness on palpation over both sacroiliac regions, pain on motion in all directions, and definite muscle spasm. He attended him at home several times and ordered him to remain in bed for about ten days. The above-described physical condition continued for at least eight or nine weeks. From April 20, 1946 to February 7, 1947, which was just prior to the trial in the superior court, the plaintiff went frequently to the doctor's office where he received massage and diathermy treatments. A belt to help support his back was also prescribed. X-ray pictures were taken of his back but the result·was negative. In all the doctor saw him professionally about fifty-one times.

It was the doctor's opinion when he last saw him that the plaintiff's back was not so stiff and that his condition was much improved although he still had some pain. He did not believe that at the time of the trial plaintiff could do the kind of work as a peddler which he had done before the accident because of the necessary bending and lifting, but that since the latter part of 1946 or early in 1947 he probably could have done some form of light work which did not require such bending and lifting. The doctor also

4

testified that he had known the plaintiff for some years, had treated him professionally before, but never for any trouble with his back.

A doctor who was a witness for the defendant testified that he examined the plaintiff on May 11, 1946; that the latter walked without any limp into the office, going up about seven steps; that he sat down in and arose from a chair without any difficulty; that he did not appear to be in any distress; that apparently there was limitation of motion in all directions of about 50 per cent, but that in his opinion this was produced by the patient's own volition; that the back strain was not as severe as the plaintiff complained of and was not of a sacroiliac nature; that his back was not in such a condition that he could not do his work as a peddler; and that the result of the examination was negative.

The plaintiff testified, among other things, that he did not keep any books of account of his peddling business from which he made between $30 and $35 a week net; that he could not read or write; that he had a copy of his income tax return but did not know where it was; that on Friday he peddled fish to individual customers, and on other days fruit and vegetables, chiefly to stores; and that he could not give the name of any customer. He also testified that after the accident he tried to peddle but that he could not climb up on and down from his truck, which he later jacked up, and that he could not lift some of the boxes and bags of produce which were quite heavy; that he still had pain but it was getting better, and that he hoped to be cured. Further it appeared in evidence that his doctor's bill was $168 and the cost of the belt $12.

It is the defendant's position that the plaintiff was not injured by the accident as seriously as he claimed; that his consequential damages were exaggerated; and that the jury's verdict was in the circumstances grossly excessive. In support of this contention it submits arguments such as are made ordinarily to a jury or to a trial justice,

asking that certain inferences be drawn from the evidence tending to show that the plaintiff intentionally magnified his injuries and damages resulting from a very minor accident. Fundamentally the issue seems to be one of credibility. The jury and the trial justice, both of whom had the advantage of seeing and hearing the witnesses testify, decided that issue in favor of the plaintiff.

In denying the defendant's motion for a new trial the trial justice carefully reviewed the evidence on the question of the amount of the damages and clearly exercised his independent judgment in reaching his decision. He referred at some length to many of the arguments now advanced by the defendant and declined to accept them as sound. He stated that in his judgment the plaintiff was not a "loafer"; pointed out that he had worked all his life in different jobs; and drew the conclusion that he would not be idle unless he was unable to work. The trial justice in approving the verdict found that it was sustained by the evidence and did justice between the parties.

It is clear that he performed his duty and applied the proper rule of law in passing upon the defendant's motion. We in turn have carefully reviewed the evidence in order to determine the correctness of defendant's contention that the amount of the verdict is grossly excessive. Upon consideration we are not able to agree with the defendant on this issue. The plaintiff proved about $200 in actual expenses. That left approximately $1300 to recompense him for money loss because he could not work as a peddler, for his pain and suffering, and for any future inability to work normally. While the verdict may be generous, in our judgment there is evidence, if believed, to preclude us from holding that it is grossly excessive.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment for the plaintiff on the verdict.

*Joseph H. Coen, A. Louis Rosenstein,* for plaintiff.
*Earl Sweeney, Frank J. McGee,* for defendant.